IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LYNN RAYMOND STUBBS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV-98-AR-0125-S |
| | ) | |
| ATLANTA FREIGHTLINER TRUCK | ) | |
| SALES & SERVICE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Presently before the court is a motion for summary judgment filed by defendant, Atlanta Freightliner Truck Sales and Service, Inc. ("Freightliner"). For the reasons set out below, the court has concluded that the motion is due to be granted.

Plaintiff, Lynn Raymond Stubbs ("Stubbs"), brought this action in the Circuit Court of Jefferson County, Alabama, alleging breach of contract and fraud in the inducement, both claims being related to the 1995 purchase of a used truck. Freightliner timely removed the action to this court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332.

This court must apply Georgia law to the case. Because a federal court uses the choice of law rules of the state in which it sits, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), this court must apply Alabama's choice of law rules. Under Alabama law, contract actions are governed by the law of

the state in which the contract was executed. *American Nonwovens, Inc. v. Nonwovens Engineering, S.R.L.*, 648 So.2d 565 (Ala. 1994). Because the contract in question was executed in Georgia, the law of Georgia applies to Stubbs' claim for breach of contract. Alabama law dictates that tort actions must apply the law of the state in which the harm occurred. *Fitts v. Minnesota Mining & Mfg. Co.*, 581 So.2d 819 (Ala. 1991). Because Freightliner's allegedly fraudulent inducement occurred in Georgia, the law of Georgia must also govern Stubbs' fraud claim. Therefore, this court will apply Georgia law to the substantive issues of both of Stubbs' claims.

### Pertinent Undisputed Facts

Stubbs operates a trucking business as a "sideline." In the course of this business, outside his regular vocation, Stubbs purchases used trucks from time to time, then hires persons to drive them in the business of transporting various goods around the country. In 1995 Stubbs undertook to locate and purchase a truck for use in this enterprise. Stubbs found a used truck in Atlanta, Georgia at the Freightliner dealership. Although the particular vehicle was older than Stubbs desired, he decided to purchase it because the truck had a newly installed, refurbished engine, for which Freightliner had purchased a warranty from Cummins, the original manufacturer of the engine. In order to

obtain this warranty, Cummins required Freightliner to subject the refurbished engine to an inspection, in accordance with Cummins' specifications. The engine passed the required inspection.

Stubbs now claims that Freightliner sales personnel made favorable representations about the condition and longevity of the vehicle, representations which, when considered along with the Cummins warranty, induced him to purchase the truck. Only days after the purchase, Stubbs' new truck began experiencing significant troubles. It overheated repeatedly. It demonstrated terribly low fuel efficiency. Black smoke billowed from the engine. As a result, Stubbs incurred substantial expense in the form of repair bills, lost productivity, lost opportunity, and sizeable incidental expenses, like unexpected motel stays for the truck's driver.

After many diagnoses and attempted repairs failed to stop the problems, Stubbs took the truck to Cummins mechanics who at last discovered the root cause of the truck's problems. An improper camshaft had been installed, possibly as a result of mistakes by Freightliner at the time the engine was refurbished.[1]

---

[1] Whether Freightliner is responsible for installing the improper camshaft is disputed. Freightliner ostensibly performed an in-frame overhaul of the engine in question. However, an engine must be taken out-of-frame in order to install a replacement camshaft. *Depo. of Jim Thompson*, at 33-34. Freightliner therefore argues that it could not have installed

Cummins fixed the problems. Although unclear from the record, it appears that Freightliner paid the bill for these repairs, claiming that it did so, not out of obligation, but as a policy decision aimed at preserving a good reputation and customer satisfaction. However, this particular lack of factual clarity is immaterial to the ultimate determination of the viability of Stubbs' claims.

Stubbs argues that the truck's condition was poorer than promised, so much so that Freightliner's representations were knowingly fraudulent. He further argues that Freightliner should pay for his economic losses, averring that Freightliner has an obligation to him arising out of warranties created orally by Freightliner's salespeople. This alleged failure to live up to the verbally-created warranties forms the basis of Stubbs' contract claim.

When Stubbs purchased the truck from Freightliner, he signed a document by which Freightliner disclaims all warranties. In large, boldface type, that document plainly states "AS IS - SOLD WITHOUT WARRANTY" at the top and "WARRANTY DISCLAIMER - SOLD AS IS" at the bottom. Among its several disclaimer statements, the document warns:

---

the improper camshaft. However, this dispute is immaterial, because any implied warranty covering Freightliner's overhaul of the engine was expressly disclaimed by Stubbs, as discussed below.

> This vehicle is sold without any warranty. The purchaser will bear the entire expense of repairing or correcting any defects that presently exist and/or may occur in the vehicle unless the salesperson promises in writing to correct such defects.

Exh. 10 to Pl.'s depo.

Stubbs signed an acknowledgment at the bottom of the disclaimer document, which reads as follows:

> BUYER HEREBY ACKNOWLEDGES HE HAS READ, UNDERSTANDS AND ACCEPTS, [sic] THE PROVISIONS OF THIS WARRANTY STATEMENT FOR THE ABOVE-IDENTIFIED VEHICLE.

Id.

The invoice for the transaction also contained a disclaimer of warranties. Along with these disclaimers, Stubbs was also provided documentation of the Cummins warranty for the refurbished engine; that document clearly indicates that Cummins, not Freightliner, is the provider of any warranty coverage. See Exh. 2 to Pl.'s depo.

### Breach of Contract Claim

Under Georgia law, a claim for breach of contract requires a showing that a contract existed, that said contract was breached, and that damage resulted. *Graham Bros. Constr. Co. v. C.W. Matthews Contracting Co.*, 159 Ga.App. 546, 284 S.E.2d 282 (Ga.Ct.App. 1981). Stubbs does not claim that the warranty contract with Cummins was breached. In this action, he claims only that the "promises, statements, representations, and commitments... regarding the condition and longevity" of the truck were "material conditions" of the purchase agreement with

Freightliner. Despite his vaguely drafted complaint, Stubbs appears to argue that the representations were false and that the implied warranties, created by those very promises and representations, were broken.

This court finds nothing in the <u>written</u> purchase contract which, when considered in the light most favorable to Stubbs' allegations and evidence, suggests a breach. Stubbs' complaint principally concerns the <u>oral</u> agreements which he alleges to have existed between Freightliner and himself. Unfortunately for him, under Georgia law, neither oral contract terms nor implied warranties exist when they are disclaimed in writing. *See, e.g., Corbett v. North Florida Clarklift, Inc.*, 155 Ga.App.701, 272 S.E.2d 563 (Ga.Ct.App. 1980). *See also* Ga. Code § 11-2-316(3)(a)("Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is,' 'with all faults,' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty.'"). If Stubbs intended to rely upon representations by Freightliner's sales staff, Georgia law would have protected him only if he had insisted that those representations be reduced to writing and incorporated into the written purchase contract. *Schlange-Schoeningen v. Parrish*, 767 F.2d 788, 793 (11th Cir. 1985)(The law "will not permit reliance upon a promise the enforcement of

- Page 6 of  8 -

which the buyer by his own diligence, could have insured."). Because the alleged promises, representations, and warranties did not form part of a valid contract between Stubbs and Freightliner, Georgia law provides no recourse. Having been expressly disclaimed by the enforceable contract, neither oral representations nor implied warranties could have formed a basis for a breach claim. Stubbs' claim for breach of contract fails.

### Fraud in the Inducement

In order to prove fraud under Georgia law, a plaintiff must demonstrate that representations were made which, at the time made, were known to be false, and which were made with the intent to deceive. Furthermore, the claimant must demonstrate reliance upon the misrepresentations, as well as damages proximately caused thereby. *Bragg v. Sirockman, et al.*, 314 S.E.2d 478, 479 (Ga.Ct.App. 1984). In light of the express and unambiguous disclaimers of warranties, as acknowledged by Stubbs' own signature, Stubbs cannot show either that a misrepresentation was made or that he relied upon them if made. When Stubbs signed the disclaimer, he effectively proclaimed his understanding that no warranties existed, other than what was written (*i.e.*, the Cummins warranty on the refurbished engine). How could he have been deceived if no false representations were made? How could he have relied to his detriment upon false statements if none

were made?  Not having shown either misrepresentations or detrimental reliance, the elements required for a showing of fraud are not present.  Stubbs' fraud claim fails as a matter of law.[2]

### Conclusion

For the foregoing reasons, the court determines that Stubbs' claims for breach of contract and for fraud in the inducement fail as a matter of law.  As a matter of law, Freightliner is entitled to judgment in its favor, and its motion for summary judgment is due to be granted.  A separate and appropriate order will be entered.

DONE this 28th day of April, 1999.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

---

[2] The court notes that Stubbs' fraud claim fails for the additional reason that "statements, representations, promises, and commitments" about <u>future events</u> cannot support a fraud claim against Freightliner, unless it <u>knew</u> that the future events would not occur.  In the case of *Hill v. Jay Pontiac, Inc.*, 191 Ga.App. 258, 381 S.E.2d 417 (Ga.Ct.App. 1989), the Georgia court held that "[m]ere broken promises, unfulfilled predictions, and erroneous conjectures" cannot form the basis of fraud. Therefore, even if Freightliner had predicted superior "longevity" for the truck engine in question, and even if Stubbs had not signed and acknowledged an express disclaimer of such statements, Stubbs fraud claim fails for this reason.